IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | Case No. 25-51660-CAG |
| COLLINS ASSET GROUP, LLC, | § § | Chapter 7 |
| Debtor.[1] | § § | |

**EXPEDITED MOTION OF RON SATIJA, CHAPTER 7 TRUSTEE, FOR ENTRY OF ORDER (A) APPROVING SALE PROCEDURES FOR SALE OF THE DEBTOR'S ASSETS, (B) SETTING AN AUCTION AND FINAL HEARING TO APPROVE SALE OF THE DEBTOR'S ASSETS, (C) APPROVING FORM AND MANNER OF SALE, AUCTION, AND SALE HEARING, AND (D) GRANTING RELATED RELIEF**

**EXPEDITED RELIEF IS REQUESTED HEREIN.**

**To the Honorable Craig A. Gargotta, Chief United States Bankruptcy Judge:**

Ron Satija, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Debtor Collins Asset Group, LLC ("Collins" or the "Debtor"), in the above-captioned chapter 7 bankruptcy case (the "Case"), files this *Expedited Motion of Ron Satija, Chapter 7 Trustee, for Entry of an Order (A) Approving Sale Procedures for Sale of the Debtor's Assets, (B) Setting An Auction and Final Hearing to Approve Sale of Debtor's Assets, (C) Approving Form and Manner of Sale, Auction, and Sale Hearing, and (D) Granting Related Relief* (the "Motion"). The facts and circumstances supporting this Motion are set forth in the *Declaration of Ron Satija* (the "Satija Declaration"), which is attached hereto as **Exhibit B**. The Trustee submits that the Sale Procedures (as defined herein) and other relief requested herein, if granted, will facilitate the sale of the Debtor's Assets (as defined herein) for the highest or otherwise best value. In support of the Motion, the Trustee would respectfully request as follows:

---

[1] The last four digits of this Debtor's federal tax identification number are 3148. This Debtor's address is 6001 W. William Cannon Drive, Suite 102, Austin, Texas 78749.

127196.000001 4897-1315-9802.6        1

## I. PRELIMINARY STATEMENT

1. By this Motion, the Trustee seeks entry of an order approving the Sale Procedures (as described herein) for the sale of the Debtor's consumer debt portfolios. The Debtor's primary assets consist of consumer debt portfolios that include credit card debt, automobile loans, medical loans, mortgage loans, personal loans, and student loans, among others (collectively, the "Portfolios"). The Trustee has determined that a sale of all of the Debtor's assets, which includes the Portfolios and their underlying documentation (collectively, the Portfolios and underlying documents are herein referred to as the "Assets").

2. The Assets are not appreciating in value. The Trustee believes it is in the best interest of the Estate, creditors, and other parties in interest to begin the process of soliciting buyers for the Assets. A sale process will allow the Estate to realize the value of the Assets and maximize recovery in this Case. Many of the Portfolios' licenses, bonds, and registrations expire on December 31, 2025. As such, expedited consideration of this Motion is critical to preservation of Estate value.

3. The Trustee and his professionals have developed bidding and auction procedures for the efficient marketing, auction, and sale of the Assets (the "Sale Procedures") in an orderly and value-maximizing manner. The Sale Procedures are intended to provide the Trustee with flexibility to solicit proposal, negotiate transactions, hold an auction via submission of sealed bids, and consummate this transaction for the highest or best value, for the benefit of creditors. The Trustee further proposes to sell the Assets pursuant to 11 U.S.C. § 363(f).

## II. RELIEF REQUESTED

4. By this Motion, pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Trustee requests approval of the following:

a) An order, substantially in the form attached hereto as **Exhibit A** (the "Sale Procedures Order"), which:

   i) Authorizes and approves the Sale Procedures (as defined below), substantially in the form attached to the Sale Procedures Order as **Exhibit 1** thereto, in connection with the sale of the Assets (a "Sale Transaction");

   ii) Permits the Trustee to schedule an auction of the Assets (the "Auction");

   iii) Schedules a hearing (the "Sale Hearing") to consider approval of the proposed Sale Transaction;

   iv) Authorizes and approves the form and manner of notice of the sale of the Assets, Auction, and Sale Hearing, substantially in the form attached to the Sale Procedures Order as **Exhibit 2** thereto (the "Sale Notice"); and

   v) Grants related relief.

b) Following entry and compliance with the Sale Procedures Order, one or more orders (each, a "Sale Order") authorizing and approving the following:

   i) The sale of the Assets free and clear of all liens, claims, interests, and encumbrances, except for certain permitted encumbrances to be determined by the Trustee and any purchaser of the Assets, with liens, if any, attached to the proceeds of the applicable Sale Transaction; and

   ii) Granting related relief.

### III. JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

6. Venue is proper before this Court pursuant to 28 U.S.C §§ 1408 and 1409.

### IV. BACKGROUND

7. On June 4, 2025 (the "Petition Date"), Collins filed its voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, Case No. 25-10994 (LSS). George L. Miller was appointed as the chapter 7 trustee in Delaware prior to the transfer of the Case to this District.

8. On June 25, 2025, John Patrick Lowe, state-court receiver over Ferrum Capital, LLC and Ferrum IV, LLC (the "Receiver"), and various plaintiffs (collectively, the "Plaintiffs") filed their *Motion of Plaintiffs and Receiver of Ferrum Capital, LLC and Ferrum IV, LLC to Transfer Venue of Bankruptcy Cases* [ECF No. 22] (the "Venue Transfer Motion"), seeking a transfer of venue of the Debtor's Case from Delaware to this District.

9. After notice and a hearing on July 25, 2025, the Honorable Laurie S. Silverstein granted the Venue Transfer Motion and entered the *Order Granting Motion of Plaintiffs and Receiver for Ferrum Capital, LLC and Ferrum IV, LLC to Transfer Venue of Bankruptcy Cases* [ECF No. 76], transferring the Case to this District.

10. On August 5, 2025, the United States Trustee for the Western District of Texas filed the *Notice of Appointment of Successor Trustee and Fixing of Bond* [ECF No. 94], appointing Ron Satija as Trustee for the Estate in the Case as of August 1, 2025.

11. Prior to the Petition Date, Collins was a debt buyer and debt collection company that reported collection accounts on consumer credit reports. Collins historically purchased many types of debt accounts, including credit card, auto loan, student loan, medical debt, and other types

of consumer debt. Since fall 2021 when Collins' former owner, Walt Collins, was bought out of Collins' ownership structure, the servicing of the Assets was either done by an affiliated company of Oliphant, Inc.[2] or by an external servicing company, which would enter into one or more subservicing agreements for the Portfolios with one or more of the Oliphant Entities.

12. On October 10, 2025, the Court entered the *Order* [ECF 154] (the "Garnet Order") approving the *Expedited Application of Ron Satija, Chapter 7 Trustee, for Approval of Employment of Garnet Capital Advisors, LLC as Broker to the Chapter 7 Trustee* [ECF No. 141], approving the Trustee's employment of Garnet Capital Advisors, LLC ("Garnet") as broker in the Case. The Garnet Order prohibited Garnet from initiating services contemplated in Paragraphs 1.5-1.10 of their engagement letter with the Trustee without further order of this Court.

13. The Trustee believes that Garnet, with their particular expertise and national reach, will enable him to obtain the highest and best offer available under the circumstances and assist him with exercising informed business judgment with respect to competing offers of bids for the Assets.

14. The Trustee believes it is in the best interest of the Estate to begin the process of soliciting offers and conducting the sale of the Assets. After discussing the various factors that could impact the sale of the Assets, the Trustee and Garnet have concluded that it would be in the best interest of the Estate to conduct the sale during the first quarter of 2026 to take advantage of the seasonal lack of supply of such assets in the market. However, given the uncertainty surrounding illiquid markets, the Trustee requests the Court grant him discretion to postpone the sale and conduct it at a later date, if necessary. In determining when the sale should occur and

---

[2] On or around October 2023, Collins and Hollins Holdings, Inc. were removed as affiliated entities of Oliphant, Inc. and its other affiliated entities and subsidiaries (collectively, the "Oliphant Entities").

whether to postpone it, the Trustee will incorporate Garnet's expertise and its keen understanding of the distressed asset market and rely on his business judgment and understanding of the Estate and this Case's procedural posture to make such determination.

15. The Trustee believes that the Assets have meaningful value, but the Assets may be encumbered by liens such that it may be that there will be few, if any, funds available for payment of claims of unsecured creditors.

16. The Trustee, with Garnet's guidance, has prepared Sale Procedures for the sale of the Assets. *See* Satija Declaration, at ¶ 5.

17. The Trustee has not received any indication that an allegedly secured creditor of the Estate objects to the Assets being sold pursuant to 11 U.S.C. § 363(f). As a result, the Trustee believes that he may sell the Assets subject to the protection of a valid and unavoidable lien of an allegedly secured creditor that attaches to the proceeds, notwithstanding the protections provided to the Trustee and the Estate under 11 U.S.C. § 506(c).

## V. SALE PROCEDURES

18. The Trustee seeks Court approval of the following sales procedures (the "Sale Procedures") for the Assets.

   a) <u>Marketing the Sale</u>. Garnet will begin the sales process by widely announcing the sale of the Assets to approximately 3,000 individuals and entities (the "<u>Initial Announcement</u>"). The Initial Announcement will be made to traditional hedge funds, lenders, and other debt buyers. Garnet's Initial Announcement will be made via email and include an overview of the Assets and the anticipated sale timeline. Garnet will make targeted telephone calls to those who have articulated an interest in the Assets or whose business interests align with the acquisition of the Assets and make further targeted efforts to those it believes would be best suited and interested in acquiring the Assets.

   b) <u>Due Diligence</u>. Following the Initial Announcement, Garnet will offer a due diligence period that will last a minimum of three (3) weeks (the "<u>Due Diligence Period</u>"). During the Due Diligence Period, Garnet will make available relevant information assembled by Garnet and approved by the Trustee regarding the Assets for prospective bidders via a secure data room.

        The information available will include data files, account document examples, and the proposed sale agreement. To access the secure data room, prospective bidders must execute a nondisclosure agreement substantially in the form attached to the Sale Procedure Order as <u>Exhibit 3</u>.

c)    <u>Bid Date and Deadline</u>. At 2:00 p.m. Eastern on the first Tuesday after the Due Diligence Period concludes (the "<u>Bid Date</u>"), Garnet will begin accepting bids for the Assets and open the Auction. Qualified Bidders (as defined below) must submit a proposed purchase and sale agreement reflecting the terms of their offer. Bids must be submitted to Garnet via email at bids@garnetcapital.com. The deadline for submission of Qualifying Bids for the Assets to Garnet is 2:00 p.m. Eastern on [_____, 2026], which is approximately twenty five (25) calendar days after the start of the Due Diligence Period (the "<u>Bid Deadline</u>").

d)    <u>Qualified Bidders</u>. To submit a valid bid, a bidder must be a Qualified Bidder. To be a Qualified Bidder, one must (a) have executed the nondisclosure agreement referenced herein and approved by the Court; (b) deliver financial information to Garnet, which is acceptable to the Trustee, demonstrating that the potential bidder can timely close on a proposed transaction by providing proof of funds in an amount of no less than the amount of its submitted bid or a copy of a letter of credit in the amount of its submitted bid; and (c) have completed a full registration with Garnet. Qualified Bidders that are not banks or credit unions must pass Garnet's vetting process, which includes a more stringent review for those who are seeking to purchase charged-off debt. As part of Garnet's standard vetting process, Garnet conducts searches with the United States Office of Foreign Assets Control, the United States Consumer Financial Protection Bureau, and the Better Business Bureau.

e)    <u>Qualifying Bids</u>. Each bid shall satisfy the requirements set forth below. The bidder shall provide a letter of explanation if the bidder cannot or does not provide the below information. The Trustee, in his sole business judgment and after consultation with Garnet, has the right to waive compliance with any of these requirements based on the bidder's explanation.

    i.    The bid must be submitted on or before the Bid Deadline.
    ii.    The bid must contain no financing contingencies, due diligence contingencies, or any other conditions precedent.
    iii.    The bid must remain open and irrevocable and unchangeable (except to increase the purchase price) until it is either (i) accepted as the highest and best bid at the Auction, and if so accepted, through the closing of the sale, or (ii) rejected at the close of the Auction;
    iv.    The bid must not be subject to the approval of the bidder's board of directors or any other approval body of such bidder; and
    v.    The bid must contain a sales contract that is blacklined from the one provided by the Trustee and/or Garnet, a completed bid sheet, and

the financial documentation identified herein establishing the bidder as a Qualified Bidder.

f) <u>Auction via Sealed-Bid Sale</u>. After the Bid Deadline, Garnet will provide the Trustee with all bids received. After evaluating all bids, the Trustee will determine, in his sole business judgment and after consultation with Garnet, whether it is necessary to make any counteroffers or allow Qualified Bidders to submit a second round of bids as their highest and best offer. A counteroffer or second round of bids may be necessary if more than one bid is received for the same price, the bids received are substantially equal after evaluating all factors, and/or to provide bidders the opportunity to match certain non-monetary terms in the offer. The Trustee anticipates announcing the winning bid or bids within ten (10) calendar days after the conclusion of any Auction.

g) <u>Evaluation of Bids</u>. The Qualified Bidder that submits the highest and best bid, as determined by the Trustee in his business judgment and after consultation with Garnet and legal counsel, shall be deemed the "<u>Successful Bidder</u>." The highest and best bid may be determined by considering, among other things:

- The purchase price;
- The likelihood that a Qualified Bidder can, and will, close the Sale Transaction;
- The net benefit to the Estate; and
- Such other factors as the Trustee may deem relevant in his sole discretion.

Within three (3) business days after the Successful Bidder is announced and if not already done, the Successful Bidder must complete and sign all agreements, contracts, instruments, or any other documents evidencing and containing the terms and conditions upon which the highest and best bid was made.

If only one Qualifying Bid is received for the Assets from a Qualifying Bidder and the Trustee determines, in his business judgment, to consummate a Sale Transaction for the Assets with the Qualified Bidder, then the Trustee may file with the Bankruptcy Court and serve on the Sale Notice Parties a notice (the "<u>Notice of Hearing and Designation</u>"), which shall (i) indicate that the Auction has been cancelled, (ii) indicate that the applicable Qualified Bidder is the Successful Bidder, and (iii) set forth the date and time of the Sale Hearing for the Assets.

h) <u>Notice of the Auction</u>. Before the Bid Date, the Trustee will file with the Court and serve on all interested parties a notice of the proposed Auction in the Sale Notice. Any interested parties appearing in this Case shall receive a copy of the Sale Notice and this Motion through the Court's CM/ECF filing system. Any other interested parties shall receive a copy of the Sale Notice and this Motion

        through regular U.S. Mail, if necessary. The form Sale Notice is attached to the Sale Procedure Order as <u>Exhibit 2</u>.

i) <u>Notice Procedures</u>. All interested parties will have notice of and the opportunity to object to the sale of the Assets. Additionally, at least thirty (30) calendar days before the Bid Deadline, the Trustee will file with the Court and serve on all interested parties the Sale Notice.

j) <u>Amendment of Sale Procedures</u>. The Trustee may: (a) impose at or before the Auction such other and additional terms and conditions as he deems appropriate, and/or (b) adjourn the Auction to a later date and time.

k) <u>Closing the Sale and Payment of Breakup Fee</u>. After the winning bid is announced, the Trustee shall seek Court approval to proceed with closing the Sale Transaction with the Successful Bidder. No bidder or other party-in-interest shall be entitled to any breakup fee, expense reimbursement of its costs, expenses, or professional fees incurred in connection with a Sale Transaction and competitive bidding process for the Assets, including formulation and submission of any bid or any due diligence efforts, or breakup, termination, or similar fee or payment.

l) <u>Private Sale</u>. The Trustee reserves the right to seek authority from the Court to sell the Assets by a private sale if the best interest of the Estate would be served by a private sale.

m) <u>Sale of Assets Free and Clear</u>. If the Court grants this Motion, the Trustee's sale of the Assets shall be free and clear of all liens, claims, and encumbrances, unless the Court orders that such liens, claims, or encumbrances shall attach to the proceeds of such proceeds. If any party asserts a lien, claim, or encumbrance on the Assets to be sold and if the lien, claim, or encumbrance is not resolved prior to the closing of the Sale Transaction of the Assets, such Sale Transaction may go forward to closing, with a determination of the extent, validity and/or priority of the alleged lien, claim, or encumbrance to be made by the Court at a later date and time.

n) <u>Report of Sales Results</u>. The Trustee shall file and serve a report on the completion of any Sale Transaction of the Assets once closed.

19. Pursuant to the Sale Procedures Order, the Trustee will take such action as is necessary and appropriate for the preservation of the Assets and, if necessary and upon approval from the Court, to oversee an orderly liquidation to preserve the value of the Assets.

20. The Portfolios are one of the largest, if not the largest, asset of the Estate. Allowing a sale of the Assets will result in liquid assets for the Estate and relieve the Estate of burdensome and continuous compliance, licensing, and regulatory obligations, liabilities, and penalties. Implementation of the Sale Procedures will enable Garnet to sell the Assets for the Trustee in an orderly, efficient, and equitable manner and maximize the proceeds received from a Sale Transaction. A sale of the Assets pursuant to the Sale Procedures described herein is in the best interest of the Estate.

## VI. ARGUMENT AND AUTHORITIES

21. The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the bankruptcy estate. *CFTC v. Weintraub*, 471 U.S. 343, 353 (1985) ("A trustee has the duty to maximize the value of the estate."). To that end, courts in this District routinely approve procedures intended to enhance competitive bidding that are consistent with the goal of maximizing the value received by the Estate and, therefore, are appropriate in the context of bankruptcy transactions. *See, e.g.*, *In re Trudy's Texas Star, Inc.*, Case No. 20-10108-hcm, ECF No. 210; *In re HPV Family, LLC*, Case No. 24-10313-cgb, ECF No. 97; *In re Rebecca Mae Pederson*, Case No. 24-50542-cag, ECF No. 25.

22. Given Collins' current financial situation and after exploring all alternatives, the Trustee believes that the sale process set forth herein will maximize the value of the Assets. The Sale Procedures are designed to promote active bidding from seriously interested parties and to elicit the highest or otherwise best offers available for substantially all of Collins' Assets, while allowing for flexibility to consider bids for particular Assets.

23. The Trustee believes that the Sale Procedures will allow him to solicit offers for the assets and conduct a sale in a controlled, fair, and open fashion that will encourage participation

by financially capable bidders who will offer the best package for the Assets and who can demonstrate the ability take on the Assets, obligations, and liabilities being transferred. In particular, the Sale Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a sealed, timely, and well-informed bid.

24. Accordingly, the Sale Procedures should be approved because, under the circumstances, they are reasonable, appropriate, and in the best interest of the Estate and all parties in interest.

## VII. CONCLUSION

WHEREFORE, the Trustee respectfully requests that this Court enter the Sale Procedures Order: (i) granting this Motion; (ii) approving the Sale Procedures and forms of noticing described in this Motion; (iii) setting the Bid Deadline, Sale Hearing, and the Sale Objection Deadline; and (iv) granting such other relief as the Court deems just and proper.

Dated: December 31, 2025

Respectfully submitted,

**DYKEMA GOSSETT PLLC**

By: */s/ Danielle Rushing Behrends*
Danielle Rushing Behrends
State Bar No. 24086961
dbehrends@dykema.com
Dominique A. Douglas
State Bar No. 21434409
ddouglas@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

**COUNSEL TO RON SATIJA,
CHAPTER 7 TRUSTEE**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of December, 2025, the foregoing document was served electronically on all parties registered to receive notice though the Court's CM/ECF service, including:

| | |
|---|---|
| United States Trustee for the Western District of Texas<br><br>615 E Houston, Suite 533<br>San Antonio, TX 78205<br>**via CM/ECF** | Collins Asset Group, LLC, Debtor<br><br>6001 W. William Cannon Dr<br>Suite 102<br>Austin, TX 78749<br>**via CM/ECF through its attorney** |
| Oliphant Financial, LLC<br><br>c/o Michael Ridulfo and Abigail Rogers<br>Kane Russel Coleman Logan PC<br>401 Congress Avenue,<br>Suite 2100<br>Austin, TX 78701<br>**via CM/ECF through its attorney** | Oliphant USA, LLC<br><br>c/o Michael Ridulfo and Abigail Rogers<br>Kane Russel Coleman Logan PC<br>401 Congress Avenue,<br>Suite 2100<br>Austin, TX 78701<br>**via CM/ECF through its attorney** |
| John Patrick Lowe, as state-court receiver for Ferrum Capital, LLC<br><br>2402 East Main Street<br>Uvalde, TX 78801<br>**via CM/ECF** | Counsel to Musgrove Plaintiffs<br><br>Randall A. Pulman<br>Kerry Alleyne-Simmons<br>Pulman LeFlore Pullen & Reed LLP<br>2161 NW Military Highway, Suite 400<br>San Antonio, TX 78213<br>**via CM/ECF through their attorneys** |
| Counsel to John Patrick Lowe, as state-court receiver for Ferrum Capital, LLC<br><br>Royal Lea<br>Royal Lea Law Office<br>1901 NW Military Highway #218<br>San Antonio, TX 78213<br>**via CM/ECF through his attorney** | Counsel to The Heller Group, LLC & Judith Heller TTEE, Judith Heller Revocable Trust 1/7/1988<br><br>Lester A. Ottenheimer, III<br>750 W. Lake Cook Road, Suite 290<br>Buffalo Grove, IL 60089<br>**via CM/ECF through their attorney** |
| | Any party that has requested notice pursuant to Bankruptcy Rule 2002<br>**via CM/ECF** |

*/s/ Danielle Rushing Behrends*
Danielle Rushing Behrends